**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



_____
Mary Ann Whipple
United States Bankruptcy Judge
(Successor Judge Docket)

**Dated: April 8 2014**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 12-34162 |
| | ) | |
| Solomon Ray Cunningham | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 12-3201 |
| Ray's Services, Inc. | ) | |
| | ) | SUCCESSOR JUDGE |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Solomon Ray Cunningham | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OF DECISION AND ORDER REGARDING</u>
## <u>MOTIONS FOR SUMMARY JUDGMENT</u>

This adversary proceeding is before the court on the Motion for Summary Judgment filed by Plaintiff Ray's Services, Inc. [Doc. # 9]. Defendant Solomon Ray Cunningham filed a Response to the Motion for Summary Judgment [Doc. # 10], with Plaintiff then filing its Reply. [Doc. # 11]. In its Complaint commencing this adversary proceeding, Plaintiff seeks a determination of nondischargeability on the claim it holds against Defendant arising out of a state court judgment. Defendant is a debtor before this court, having filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under Title 11 and arising in a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Because this adversary proceeding involves a determination as to the dischargeability of a particular debt, this is a core proceeding that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(I). For the reasons that follow, Plaintiff's Motion for Summary Judgment will be denied.

## FACTUAL BACKGROUND

Plaintiff Ray's Service, Inc. is a corporation operating under the name of "Ray's Towing Service" ("Plaintiff"). In 2006, Plaintiff filed a complaint against the Defendant/Debtor Solomon Ray Cunningham ("the Debtor") in the Wood County, Ohio Court of Common Pleas, seeking damages and injunctive relief for trademark infringement. [Doc. # 11, Ex. 3]. In the state-court complaint, Plaintiff alleged that the Debtor had been operating an automotive repair and towing business, using the name "Ray's Towing Service," which the Plaintiff used as its trademarked name. [Doc. # 11, Ex. 3 at pp. 2-3]. Plaintiff's state court complaint as against Debtor set forth three claims: violations of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code Chapter 4165; the Lanham Act, 15 U.S.C. § 1125; and an Ohio common law claim of unfair trade practices. [Doc. # 11, Ex. 3]. As to the Ohio statutory claim, Plaintiff also alleged that the Debtor's acts "were committed willfully, such that Plaintiff is further entitled to recover its attorney fees from Cunningham under Ohio Revised Code § 4165.03(B)." [*Id.* at p. 5, ¶ 15]. As to the Ohio common law claim, Plaintiff alleged that "Cunningham's actions were willful and malicious, or with utter disregard for the rights of Plaintiff, such that Plaintiff is further entitled to recover punitive damages and attorney fees from Cunningham." [*Id.* at p. 7, ¶ 29]. In its prayer for relief against Debtor in the state court complaint, in addition to injunctive relief, Plaintiff sought three times Cunningham's profits, "its reasonable attorney's fees and investigative fees pursuant to 15 U.S.C. § 1117," its costs and "such other and further relief that this Court deems legally and equitably appropriate." [*Id.*, pp. 8-10]. Foreseeing where any state court judgment would end up, but also problematic from a jurisdictional standpoint, the state court complaint also asked the state court to order under 11 U.S.C. § 523(a)(6) that "Cunningham be prohibited from a discharge under 11 U.S.C. §727 for malicious, willful and fraudulent injury to Plaintiff." [*Id.*, p.10, ¶ 8]. *But see* 11 U.S.C. § 523(c)(1), (d); Fed. R. Bankr. P. 4007(c).

The Debtor filed an answer to Plaintiff's state court complaint. [Doc. # 11, Ex.4]. Thereafter, during discovery, the Debtor failed to attend two scheduled depositions. [Doc. #11, Ex. 5, p.1]. Based upon his

12-03201-jpg    Doc 13    FILED 04/08/14    ENTERED 04/08/14 09:31:55    Page 2 of 16

nonattendance, Plaintiff filed a motion for discovery sanctions. [Doc. #11, Ex. 5]. Among the sanctions sought by Plaintiff was the entry of a default judgment against the Debtor. On December 11, 2006, the state court, finding that the Debtor "failed/refused" to appear at a duly noticed deposition, entered a judgment by default in favor of Plaintiff finding liability on all three claims against Debtor, including preliminary and permanent injunctive relief, and scheduling a hearing for an assessment of damages. [Doc. # 11, Ex. 6].

After holding an evidentiary hearing on the issue of damages, the state court entered judgment in Plaintiff's favor on the complaint on January 26, 2007. [Doc. # 1, Pt. 2; Doc. # 9, Ex.]. The entire state court Judgment Entry states as follows:

> This cause came on for hearing before the Court on January 18, 2007, for an assessment of Plaintiff's compensatory, statutory, and punitive damages and attorney fees, against Defendant, pursuant to Count One, Two, and Three of the Complaint, and paragraph 1 of the Court's December 11, 2006 Judgment Entry.
> Based upon the evidence adduced at hearing, and the argument of counsel, the Court finds that Defendant willfully, knowingly, fraudulently, deliberately, and maliciously infringed upon the Plaintiff's trade name and trademarks, and that plaintiff is entitled to an award of damages as follows:
>
> 1.     Profits from Defendant's misuse of Plaintiff's trade name and trademarks, in the amount of $195,929.00;
>
> 2.     Plaintiff's actual damages caused by Defendant's misuse of Plaintiff's trade names and trademarks, in the amount of $46,947.00;
>
> 3.     Plaintiff's attorney fees in the amount of $7,312.08; and,
>
> 4.     The costs of this action;
>
> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED, that judgment is hereby granted to Plaintiff against the Defendant, in the aggregate amount of a $250,188.09, plus costs.

*Id*.

On September 9, 2012, the Debtor filed his petition in this court for relief under Chapter 7 of the United States Bankruptcy Code, Case Number 12-34162. Plaintiff then timely filed this adversary proceeding against the Debtor, seeking to have its claim determined to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6). [Doc. # 1]. Plaintiff now seeks summary judgment on its Complaint. [Doc. # 9].

**LEGAL ANALYSIS**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In reviewing a motion for summary judgment, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).[1] Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.*

As the statutory basis for its complaint to determine dischargeability, Plaintiff relies on § 523(a)(6). This provision excepts from discharge any debt caused by a debtor's willful and malicious conduct, providing:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

In seeking to have its claim held nondischargeable under § 523(a)(6), Plaintiff bears the ultimate burden

---

[1] Although none of the documents offered in support of Plaintiff's Motion are authenticated, Defendant has not objected to Plaintiff's reliance on such documents. The court will, therefore, consider the documents for purposes of determining Plaintiff's Motion. *See* Fed. R. Civ. P. 56(c)(1) and (2); *Loadman Group, L.L.C. v. Banco Popular North America*, No 4:10CV1759, 2013 U.S. Dist. LEXIS 40267, at *4-*6, 2013 WL 1154528, at *9 (N.D. Ohio March 19, 2013) (explaining that the 2010 amendment to Rule 56 "replaces a clear, bright-line rule ('all documents must be authenticated') with a multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method for doing so at trial"); *Obnamia v. Shinseki*, No. 11-1204, 2013 U.S. Dist. LEXIS 137621, at *5-*6, n.1, 2013 WL 5408267, at *2, 2013 (S.D. Ohio 2013) (explaining that subject to the opposing party's objection, Rule 56 "allows a party making or opposing a summary judgment motion to cite to materials in the record, whether authenticated or not"); *Martin v. Performance Boat Brokerage.com, LLC*, No. 11-1204, 2013 U.S. Dist. LEXIS 135543, at * 9, 2013 WL 5317460, at *3 (W.D. Tenn. Sept. 23, 2013) (explaining that "the objection contemplated under Rule 56 as amended is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be").

4

of persuasion to establish, by at least a preponderance of the evidence, the provision's applicability. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). In meeting this burden, the terms "willful" and "malicious" as used in § 523(a)(6) are distinct concepts, with Plaintiff needing to establish the existence of both elements to prevail on a claim of nondischargeability. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). In seeking summary judgment on its § 523(a)(6) claim, Plaintiff relies wholly on the state-court judgment for damages rendered in its favor and the application thereto of the legal doctrine of collateral estoppel, also referred to as issue preclusion.[2]

The doctrine of issue preclusion "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and *necessary to the judgment*, even if decided as part of a different claim or cause of action." *Markowitz*, 190 F.3d at 463 (6th Cir. 1999)(quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992))(emphasis added)). "The purposes of collateral estoppel are to shield litigants (and the judicial system) from the burden of re-litigating identical issues and to avoid inconsistent results." *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005).

Issue preclusion applies in the context of dischargeability litigation. *See Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995) ("The doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a).") (citing *Grogan v. Garner*, 498 U.S. at 284 n.11)). The fact that bankruptcy courts have "exclusive jurisdiction over dischargeability issues does not alter this rule." *Id.* at 53. *See also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("[A] state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts."); *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981) ("[T]hat Congress intended the bankruptcy court to determine the final result--dischargeability or not--does not require the bankruptcy court to redetermine all the underlying facts.").

The United States Constitution's Full Faith and Credit clause, U.S. Const. art. IV, § 1, is implemented by 28 U.S.C. § 1738, the federal full faith and credit statute. Under 28 U.S.C. § 1738, a federal court must accord a state court judgment the same preclusive effect the judgment would have in the courts of that state. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. at 374; *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984)*; Corzin v. Fordu (In re Fordu),* 201 F.3d

---

[2]The Sixth Circuit noted in *Corzin v. Fordu (In re Fordu),* 201 F.3d 693 (6th Cir. 1999), that the United States Supreme Court has expressed a preference for use of the terms "issue preclusion" and "claim preclusion" rather than the traditional phrases "collateral estoppel" and "res judicata." *Fordu,* 201 F.3d at 702-03 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).

12-03201-jpg    Doc 13    FILED 04/08/14    ENTERED 04/08/14 09:31:55    Page 5 of 16

693, 703 (6th Cir. 1999); *Bay Area Factors, Inc. v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997).  Issue preclusion will apply to state court judgments where (1) the law of issue preclusion in the state in which the issue was litigated would preclude relitigation of such issue and (2) the issue was fully and fairly litigated in state court. *In re Markowitz*, 973 F.2d at 461. In this case the court must apply Ohio issue preclusion principles to the state court proceedings.

Under Ohio law there are four elements to the application of issue preclusion: "(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action;  (2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;  (3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) The issue must have been identical to the issue involved in the prior suit." *Cashelmara Villas Ltd. P'ship v. DiBenedetto*, 87 Ohio App. 3d 809, 814 (1993)(quoting *Monahan v. Eagle Picher Indus., Inc.*, 21 Ohio App.3d 179, 180-81 (1984)); *see Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002); *cf. Stale ex rel. Davis v. Pub. Emps. Retirement Bd.*, 120 Ohio St. 3d 386, 392, 899 N.E.2d 975, 982 (2008)(citing *Thompson v. Wing*, 70 Ohio St. 3d 176, 183, 637 N.E.2d 917 (1994)(doctrine stated as having three factors, applying "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.")).  The person asserting issue preclusion  carries the burden of pleading and proving its requirements by a preponderance of the evidence. *Am. Fiber Sys., Inc. v. Levin,* 125 Ohio St. 3d 374, 378 (2010)(citing *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St. 3d 193, 198 (1983)); *A Packaging Service Co. v. Siml (In re Siml),* 261 B.R. 419, 422 (Bankr. N.D. Ohio 2001).

Debtor does not contest that  the  first  element above is met in this case. In the state-court proceeding,  Plaintiff named the Debtor as a  party-defendant in the state court complaint.[3] [Doc.  # 11, Ex. 3]. Nor does Debtor take issue with the competency of the state court's jurisdiction in entering judgment against him.[4] *See Stale ex rel. Davis v. Pub. Emps. Retirement Bd.*, 120 Ohio St. 3d at 386 (competency of

---

[3]The State of Ohio Department of Taxation was also a defendant in the state court case. [Doc. # 11, Exs.1-3].

[4]As indicated above, one of the requests in the prayer for relief in the state court complaint was a determination that any judgment be excepted under 11 U.S.C. § 523(a)(6) from a bankruptcy discharge, relief that the state court lacked jurisdiction to enter. S*ee* 11 U.S.C. § 523(c)(1), (d); Fed. R. Bankr. P. 4007(c). There is no indication in the parts of the state court record before this court  that the state court expressly made such a determination, which would have implicated *res judicata,* or claim preclusion. The United States Supreme Court decided in  *Brown v. Felsen*, 442 U.S. 127 (1979),  that res judicata does not apply in making dischargeability proceeding liability findings. *See Sung Ho Cha v. Rappaport (In re Sung Ho Cha)*, 483 B.R. 547, 553 (9th Cir. B.A.P. 2012)(when state court issues money judgment, "the amount of damages is determined, but issues related to

6

court to determine issue is part of the second element of issue preclusion as stated in this case). The lack of any dispute over the competency of the state court's jurisdiction is consistent with the type of court entering the judgment – a court of common pleas – with Ohio law providing that courts of common pleas are courts of general jurisdiction in the state. *Franklin County Law Enforcement Ass'n v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St. 3d 167, 169, 572 N.E.2d 87 (1991).

The gravamen of the dispute between the parties instead concerns the requirements of the second, third and fourth elements of the issue preclusion doctrine as listed above: whether Debtor had a full and fair opportunity to litigate the issues decided; whether the issues were actually tried and decided and necessary to the final judgment; and whether there is an identity of issues between those decided by the state court and the issues Plaintiff must prove to prevail under § 523(a)(6) in this court. Again, Plaintiff, as the moving party, carries the burden to show the applicability of these elements. *Am. Fiber Sys., Inc. v. Levin,* 125 Ohio St. 3d at 378; *A Packaging Service Co. v. Siml (In re Siml),* 261 B.R. at 422. To meet its burden, Plaintiff relies on the January 26, 2007, state court judgment.

Second Element: Final Judgment

The state-court judgment arose after the Debtor was adjudicated liable on counts One, Two and Three of the complaint for infringing upon the Plaintiff's trademarked business name. The liability determination was entered by the state court by default as a discovery sanction against the Debtor after he apparently failed to appear at a scheduled deposition(s). Thereafter, the state court held a prove-up hearing at which evidence was submitted and then entered the January 26, 2007, judgment set forth above in its entirety. The January 26, 2007, judgment is a final judgment on the merits for purposes of issue preclusion even though it was entered by default. *See Wagner v. Schulte (In re Schulte)*, 385 B.R. 181, 190 (Bankr. S.D. Ohio 2008).

Second Element: Full and Fair Opportunity to Litigate

The "full and fair opportunity to litigate" element of the issue preclusion doctrine "is rooted in due process concerns." *S. Atl. Neurology and Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 553 (Bankr N.D. Ohio 2006)(internal quotation marks and citations omitted); *Goodson v. McDonough Power Equip., Inc*, 2 Ohio St. 3d at 200-01, 443 N.E.2d at 985. The key to the full and fair opportunity analysis from a due process perspective is determining "whether the party had adequate notice of the issue and was afforded the opportunity to participate in its determination." *In re Lupo*, 353 B.R. at 553 (quoting *Lusk v. Williams (In re Lusk)*, 282 B.R. 267, 277 (Bankr. N.D. Ga. 2002)). Under Ohio law, "if a party is afforded an

dischargeability are not necessarily determined").

7

opportunity to litigate disputed issues of fact and elects not to participate fully in the proceeding, that tactical decision will not prevent the application of preclusion principles in a subsequent action." *State v. Foster (In re Foster)*, 280 B.R. 193, 206 (Bankr. S.D. Ohio 2002).

The parts of the state court record presented to this court show that Debtor answered the complaint through counsel. [Doc. #11, Ex. 3]. Thus, he was aware of the averments of the complaint regarding trademark infringement, the averments that Debtor's acts "were committed willfully, such that Plaintiff is further entitled to recover its attorney fees from Cunningham under Ohio Revised Code § 4165.03(B)," and as to the Ohio common law claim, that "Cunningham's actions were willful and malicious, or with utter disregard for the rights of Plaintiff, such that Plaintiff is further entitled to recover punitive damages and attorney fees from Cunningham."

Plaintiff then filed on December 6, 2006, a motion expressly asking for entry of default judgment due to alleged discovery abuses, which motion was served on Debtor's state court counsel by first class mail sent on December 5, 2006. [Doc. #11, Ex. 5]. The record before this court, which does not include the state court docket sheet or any transcript of any hearing, does not show whether a response was filed to or a hearing was held by the state court on Plaintiff's Motion for Discovery Sanctions Including Default Judgment, and if one was, whether and how Debtor was given notice of the hearing. The court notes that the Judgment Entry finding liability on Plaintiff's three claims was entered on December 11, 2006, just five days after the motion was filed. Lacking other evidence of what was going on in the case at this time, on its own this is an unusually short time for response to such an important and potentially dispositive motion where it was served by first class mail on counsel. *Cf.* Ohio Civ. R. 55(A) (party must be served with application for default judgment at least seven days prior to the hearing on such application).

The state court scheduled in its December 11, 2006, Judgment Entry a hearing on assessment of damages for January 18, 2007. Again, the state court record before this court does not actually show whether the Debtor was served with a copy of the December 11, 2006, Judgment Entry setting the January 18, 2007, damages hearing, although the entry directs the clerk to do so. And likewise the record in this court does not show whether the Debtor or his counsel participated in the January 18, 2007, damages assessment hearing.

In summary, the two state court judgment entries that are critical to Plaintiff's issue preclusion argument on summary judgment in this court are the December 11, 2006, entry and the January 26, 2007, entry. As to the December 11 entry, it was entered within five days after the motion asking for it was filed, which does not in the absence of other information about what was going on the case, such as whether a

8

hearing was held and other proceedings were already scheduled of which Defendant and counsel had notice, allow this court to find that the Debtor had a full and fair opportunity to contest the facts forming the basis for the discovery sanction and to litigate the liability finding on default as the proper remedy for missing one or more depositions. As to the January 26 entry, nothing in the record shows that the December 11, 2006, order setting the January 18, 2007, damages assessment hearing was actually served on Defendant and /or his counsel. Nor can the court tell from the record whether the Debtor or his counsel actually participated in the January 18, 2007, hearing.

There are material gaps in the state court record as presented here that this court cannot fill in for purposes of summary judgment. This court cannot simply infer or assume proceedings in a different court and their regularity without a proper record. The court thus cannot find, from the record before it on summary judgment, that Debtor was given a full and fair opportunity to litigate the issues leading to liability on Plaintiff's three claims, as set forth in the December 11, 2006, Judgment Entry, or the damages judgment of $250,188.04 and other findings, as set forth in the January 26, 2007, Judgment Entry. That does not mean that the Debtor was not afforded a full and fair opportunity to litigate the issues in the state court, just that this court cannot so find on the instant record upon which Plaintiff bears the burden of proving all of the elements of issue preclusion.

Third Element: Actually Litigated

The Debtor foremost focuses on the "actually litigated" component of the issue preclusion doctrine, taking the position that this requirement of the doctrine has not been satisfied since the judgment entered against him was rendered by default. [Doc. # 10, at pg. 4]. In the Debtor's words: "Courts have held a default judgment is insufficient basis to apply the doctrine of collateral estoppel." [*Id*. at 5].

The premise advocated by the Debtor is true as a general proposition: default judgments do not ordinarily form the basis for application of issue preclusion. The reason for this is straightforward: the essence of a default judgment is to obviate the need of a plaintiff to prove the elements of the claim alleged, and thus no issue is actually litigated underpinning the default judgment. *Reese v. Proppe*, 3 Ohio App.3d 103, 443 N.E.2d 992 (1981). However, excluding a default judgment from the reach of the issue preclusion doctrine is not an absolute rule.

Noting that Ohio courts have not agreed on whether or how to apply issue preclusion standards to default judgments, in the case *Sill v. Sweeney (In re Sweeney)*, the Bankruptcy Appellate Panel for the Sixth Circuit ("the BAP"), concluded from the equivocal Ohio case law on the subject that "a default judgment must contain express findings in order to be given preclusive effect in subsequent litigation between the

12-03201-jpg    Doc 13    FILED 04/08/14    ENTERED 04/08/14 09:31:55    Page 9 of 16

parties." 276 B.R. at 193. Relying on the bankruptcy court's persuasive analysis in *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 387 (Bankr. N.D. Ohio 1999), the BAP adopted the following test to decide whether an issue was "actually and necessarily litigated" in the context of a default judgment:

> First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding. In addition, given other potential problems that may arise with applying the collateral estoppel doctrine to default judgments (e.g., due process concerns), this Court will only make such an application if the circumstances of the case would make it equitable to do so.

276 B.R. at 193-94 (citing *Hinze v. Robinson (In re Robinson)*, 242 B.R. at 387). The BAP reasoned in adopting this analysis that:

> [T]he state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special form or formal way, but the default judgment must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

*Id.* at 194. Pursuant to *In re Sweeney*, issue preclusion should only be applied to a default judgment if, in the prior proceeding, the plaintiff submitted admissible evidence to court from which the court then made sufficiently detailed findings capable of supporting the application of the doctrine in the subsequent proceeding.

Consistent with the BAP's decision in *In re Sweeney*, this court can reasonably infer from the state court's January 26, 2007 judgment entry that Plaintiff actually submitted to the state court admissible evidence apart from Plaintiff's pleadings. That evidence was submitted at the hearing held by the state court to assess damages, is shown by the statement "[b]ased upon the evidence adduced at hearing . . ."

Plaintiff's argument that the issues in this case have already been "actually litigated" in the state court case at the prove up hearing is based on the language of the January 26, 2007, judgment entry. The sum total of the state court findings and conclusions is the conclusory list "that Defendant willfully, knowingly, fraudulently, deliberately and maliciously infringed upon the Plaintiff's trade name and trademarks." When assessing whether a state court judgment is entitled to preclusive effect in a dischargeability action, a bankruptcy court may review the entire record in the state court case to determine

10

the grounds for, or the meaning of the state court's judgment or order. *See Miller v. Grimsley (In re Grimsley)*, 449 B.R. 602, 615 (Bankr. S.D. Ohio 2011). But this court lacks most of the record from the state court action against the Debtor. There is no transcript in evidence in this case to show what evidence was submitted and admitted, and particularly what resulted from "argument of counsel" and what resulted from the wholly unknown "evidence adduced at the hearing," or whether the state court judge made any oral findings of fact. Rather the state court's entry amounts to a conclusory list of "trigger words." *See H. Park Partner, LLC v. Frick (In re Frick)*, 427 B.R. 627, 634 (Bankr. N.D. Ohio 2010). *But see* Ohio Civ. R. 52 (Findings By Court).

The issue as to the "actually litigated" element is whether this list of words alone is a sufficiently detailed set of findings and conclusions to meet the standard set forth in *In re Sweeney*. For example, and by way of contrast, in *HER, Inc. v. Barlow (In re Barlow)*, 478 B.R. 320, (Bankr. S.D. Ohio 2012), the bankruptcy court set forth and quoted pages of analysis and findings from a prior federal district court opinion in finding issue preclusion for dischargeability purposes in an action originally brought under the Anticybersquatting Consumer Protection Act. Similarly, in *Yust v. Henkel (In re Henkel)*, 490 B.R. 759, 767 (Bankr. S.D. Ohio 2013), a case in which the bankruptcy court actually held it could not apply issue preclusion on summary judgment, the transcript of the state court's default hearing was before the bankruptcy court, showing the testimony that occurred and the evidence that was admitted, as well as a finding that defendants "committed fraud by falsifying at least one draw request and one change order." The record before the court in this case is devoid of any such content or detail. Indeed the record before the court in this case is more like the record in *Clark v. Springhart (In re Springhart)*, 450 B.R. 725, 734 (Bankr. S.D. Ohio 2011)("[N]one of these vague statements by the South Carolina court constitutes the type of findings of fact or conclusions of law that are sufficiently detailed to support the application of collateral estoppel in subsequent litigation"). *See also Chandler v. Aleakis (In re Aleakis)*, Case No. 10-37871, Adv. No. 11-3164, 2012 Bankr. LEXIS 4164, at *18-*19 (Bankr. S.D. Ohio Sept. 6, 2012)("One of the difficulties in affording collateral estoppel effect to the State Court Judgment is its lack of factual findings to support the conclusory legal determinations of the court. Although the Chandlers try to provide that detail through citations to the transcript and exhibits submitted, it is very difficult to decipher what facts the state court considered fundamental to the judgment against Debtor...").

Absent more, the conclusory legal "trigger words" in the judgment entry are more on the order of "characterizations" not entitled to preclusive effect than actual findings of fact and conclusions of law from which this court can extrapolate to a § 523(a)(6) determination. *See In re Sweeney*, 276 B.R. at 194; *In re*

11

*Robinson*, 242 B.R. at 387. The court finds that the words of the January 26, 2007, judgment entry are not without more "sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding," namely this one. *In re Sweeney*, 276 B.R. at 193-94 (quoting *In re Robinson*, 242 B.R. at 387).

<u>Third Element: Necessary to Final Judgment</u>

Also embodied in issue preclusion's third element (*i.e.*, that the issue to be precluded must be actually and directly litigated in the prior action) is the related requirement that the litigated issue must be necessary to the final judgment. *Butler Cty. Bd. of Commrs. v. Hamilton*, 145 Ohio App.3d 454, 464, 763 N.E.2d 618 (2001). This requirement tests the materiality of the litigated issue so that only issues essential to the judgment are afforded preclusive effect. 32 OHIO JUR 3D *Res Judicata* § 379. On this point, the adjudication of the Debtor's willful and malicious conduct must also be construed as necessary and material to the state court's judgment assessing damages against the Debtor.

In awarding damages to Plaintiff, the default on liability for discovery misconduct specified liability on all three claims. But this court cannot tell from the judgment what claims it predicated its damages award on, whether one or more of the three claims in the complaint. Significantly, however, the adjudication of liability for damages under either of the federal Lanham Act or the Ohio Deceptive Trade Practices Act does not require a showing that a defendant acted with any specific intent to cause harm.[5] This court also notes that, despite Plaintiff's request in his complaint and despite the court's use of the "trigger words," the court did not award Plaintiff punitive damages. The court finds this omission from the state court judgment significant. Thus, based on the award of damages, the court also cannot find that the state court findings that Plaintiff relies on in this court for issue preclusive effect in this § 523(a)(6) action were necessary to the state court judgment even if the facts were "actually litigated."

Notwithstanding that the state court did not award any punitive damages as requested by Plaintiff in his state court complaint, there is nevertheless an argument that state court's award of Plaintiff's attorney fees in the amount of $7,312.08 necessarily required a determination of willful and malicious conduct by the Debtor, as included in the list of "trigger words."

Before attorney fees can be awarded for a violation of either the Federal Lanham Act or the Ohio Deceptive Trade Practices Act, culpability on the part of the defendant must be shown. First, under the

---

[5] *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 25 (2nd Cir. 2004) (it is well-established that wrongful intent is not a prerequisite to an action for trademark infringement or unfair competition, and that good faith is no defense); O.R.C. § 4165.02 (listing proscribed acts, and providing that, with certain exceptions, simply engaging in the proscribed act gives rise to liability, notwithstanding any lack of intent).

12

Lahnam Act, 15 U.S.C. § 1117(a), attorney fees can only be awarded in "exceptional cases." The Sixth Circuit Court of Appeals has held that the term "exceptional cases" means that the "the infringement was malicious, fraudulent, willful, or deliberate. " *Audi AG v. D'Amato*, 469 F.3d 534, 551 (6th Cir. 2006)( citing *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004), quoting *Hindu Incense v. Meadows*, 692 F.2d 1048, 1051 (6th Cir. 1982)). Similarly, in an action for a deceptive trade practice under Ohio law, it is provided by statute that attorney fees may only "be assessed against a        defendant if the court finds that the defendant has willfully engaged in a trade practice listed in division (A) of section 4165.02 of the Revised Code knowing it to be deceptive." *But compare In re Springhart*, 450 B.R. at 734 (declining to infer fraud in the context of a default judgment based solely on a damages award) *with Miller v. Grimsley (In re Grimsley)*, 449 B.R. 602, 618 (Bankr. S.D. Ohio 2011)(stating "that a bankruptcy court in a dischargeability case may infer a finding of fraud by a nonbankruptcy court awarding punitive damages when the award of punitive damages necessarily requires a finding of the requisite nondischargeability elements").

The problem is that the state court judgment does not state any basis for its award of attorney's fees. The basis for the entry of default judgment against the Debtor is as a discovery sanction for failure to attend a deposition. Rule 37(D) of the Ohio Rules of Civil Procedure governs the sanctions for failure of a party to attend his own deposition. The rule specifies that "the court *shall* require the party failing to act...to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court expressly finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Ohio Civ. R. 37(D)(emphasis added).    Thus, in the absence from the record before this court of any identification of the basis for the state court's award of attorney's fees, and given the mandatory language of Rule 37(D), it is equally plausible that the award was based not on § 1117 of the Lanham Act or the Ohio Deceptive Practices Act, but on the mandatory language of Rule 37(D). If so, the " trigger words" are not necessary to the judgment. And this court is thus not in a position to reason back from the fact of an award of attorney's fees to Plaintiff to find that the "trigger words" were necessary to rendition of the state court judgment, again, particularly in the absence of an award of punitive damages on the common law claim, which would ordinarily be expected to flow from such language. [6] *See Preston v. Murty*, 32 Ohio St. 3d 33,

---

[6]The Debtor also opposes the entry of summary judgment on the grounds that "counsel for Plaintiff prepared a judgment entry awarding damages that was signed by the Judge." [Doc. # 10, at pg. 4]. In other words, it is the Debtor's position that issue preclusion should not apply where counsel for a party is the scrivener of a judgment entered by a court, as is the case with the January 26, 2007 judgment. The court rejects this argument as alone being a basis for finding that the issue of the nature of the Debtor's conduct was not actually litigated in the state court. Once a court enters a judgment, that judgment constitutes the judgment of that court, including all findings and conclusions made therein. The fact that a party may have been the judgment's

36 (1987); *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St. 3d 638, 652 (1994)("actual malice" necessary for an award of punitive damages under Ohio law"); *McCullough v. Spitzer Motor Ctr., Inc.*, 108 Ohio App. 3d 530, 534 (1996)(quoting *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 12 Ohio St. 3d 241 paragraph three of syllabus (1984))(to be awarded punitive damages, a party "must establish not only the elements of the tort itself, but, in addition, must either show the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious.")).

Fourth Element: Identity of Issues

The fourth requirement under Ohio law for application of issue preclusion holds that for the doctrine

to apply, the issue to be precluded in the present suit must have been identical to the issue involved in the prior suit. *Cashelmara Villas Ltd. P'ship v. DiBenedetto*, 87 Ohio App. 3d at 814 (quoting *Monahan v. Eagle Picher Indus., Inc.*, 21 Ohio App.3d 179, 180-81 (1984)). The issue in this case is whether the state court judgment supports a determination that the Debtor acted both "willfully" and "maliciously" as those standards are set forth in § 523(a)(6). The Debtor attacks this requirement in two ways. First, Debtor argues that a trademark infringement case is generally not appropriate for application of issue preclusion principles. As set forth in his Response to the Plaintiff's Motion for Summary Judgment: "Trade mark infringement is not one of the types of acts or conducts that gives rise under section 523(a)(6) within the bankruptcy code." [Doc. # 10, at pg. 4]. Second, the Debtor asserts that from the face of the state-court judgment there "is no way to determine what standard was used by the state court when defining malicious and willful." [Doc. # 10, at p. 4].

As to the first point, the court generally disagrees that the nature of the state court action precludes application of issue preclusion in this § 523(a)(6) case. While it is true that an improper intent on the part of the infringer is not necessary to establish liability for the infringement of a trademark. *Wheel Specialties, Ltd. v. Starr Wheel Group, Inc.*, 918 F. Supp. 2d 688 (N.D. Ohio 2013)("A trademark registrant does not need to prove intent to establish liability for trademark infringement under the Lanham Act."), this precept does not create a *per se* rule that liability for trademark infringement can never lead to a § 523(a)(6) nondischargeable debt. To the contrary, other courts have persuasively determined that liability for trademark infringement may give rise to a nondischargeable debt under § 523(a)(6). *See In re Barlow*, 478 B.R. 320 (Bankr. S.D. Ohio 2012); *Asiago v. Mucci (In re Mucci)*, 458 B.R. 802 (Bankr. D. Conn. 2011).

---

scrivener does not itself diminish the efficacy of the judgment. *See* CJS JUDGMENTS § 145 ("Ordinarily, it is the duty of the successful party to see to the preparation of a proper judgment or to prepare it and submit it to the judge."). Rather, the issue is more nuanced, as discussed above: whether this court can find from the record before it, however the judgment got before the state court judge, that the language used by counsel and adopted by the state court was necessary to the judgment rendered.

The pertinent question in this regard is not the form of the underlying cause of action, but whether there is sufficiently detailed support in the first court's record for concluding that issue preclusion should apply on the issue of a debtor's willful and malicious conduct. *Louis Vuitton Malletier v. Ortiz (In re Ortiz)*, 2009 Bankr. LEXIS 2843, at \*12-\*13, 2009 WL 2912497, at \*4 (Bankr. D.P.R. June 4, 2009). In this way, a claim arising for trademark infringement is no different from many other claims that do not require any heightened level of culpability to establish liability, but which may, when coupled with other circumstances, give rise to a nondischargeable debt. For example, a simple breach of contract will not give rise to a nondischargeable debt. However, when the breach of contract is coupled with fraud, the claim may be excepted from discharge under § 523(a)(2).

As to the Debtor's second point, the court agrees with the Debtor on the basis of the record now before it. In *Kawaauhau v. Geiger*, the United States Supreme Court held that to satisfy the standard of a "willful" injury as applied to § 523(a)(6), it is necessary to show that the debtor committed a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." 523 U.S. 57, 61 (1998). This holding has been construed so as to require that a plaintiff show that a debtor acted with the specific intent to cause harm. *Kimco Leasing v. Wilson (In re Wilson)*, 383 B.R. 678, 681 (Bankr. N.D. Ohio 2007). It is not sufficient that the judgment state that a debtor engaged in willful or intentional conduct; there must be a finding that the debtor intended to cause the injury or was substantially certain that such harm would result. *In re Markowitz*, 190 F.3d at 463-64. In turn, a "malicious" injury under § 523(a)(6) requires that it be shown that a debtor acted "in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)(citing *Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 508, 48 L.Ed. 754 (1904)).

Lacking an anchor in the state court record to attach the conclusory "trigger words" to, and in the absence of an award of punitive damages, the court does not have any basis to find that the use of this list of words in the state court's January 26, 2007 judgment, either individually or collectively, adds up to the heightened standard of culpability required by the Supreme Court in *Kawaauhau v. Geiger* in interpreting "willful" and as required by other binding precedent in interpreting "malicious."

## CONCLUSION

In conclusion, the court finds that the Plaintiff has not at this time met its burden of showing that the doctrine of issue preclusion applies to the January 26, 2007, default judgment rendered by the state court

15

for trademark infringement as a discovery sanction. Based on the foregoing reasons and authorities,

      **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 9] is **DENIED.** By separate order of the court, a further pretrial conference will be set at which a case management schedule on the Complaint will be established.

###