**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: March 10 2015

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 12-34162 |
| | ) | |
| Solomon Ray Cunningham | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 12-3201 |
| Ray's Services, Inc. | ) | |
| | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Solomon Ray Cunningham | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF DECISION AND ORDER REGARDING
### MOTION FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on the Second Motion for Summary Judgment ("Motion") filed by Plaintiff Ray's Services, Inc. ("Plaintiff") [Doc. # 26] and the Motion's Support Documents [Doc. # 27]. Defendant/Debtor Solomon Ray Cunningham filed a Response to the Motion for Summary Judgment [Doc. # 28]. In its Complaint commencing this adversary proceeding, filed on November 27, 2012 [Doc. # 1], Plaintiff seeks a determination of nondischargeability on the claim it holds against Defendant arising out of a state court judgment. Defendant is a debtor before this court, having filed a petition for relief under Chapter 7 of the

United States Bankruptcy Code on September 11, 2012.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under Title 11 and arising in a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Because this adversary proceeding involves a determination as to the dischargeability of a particular debt, this is a core proceeding that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(I). For the reasons that follow, Plaintiff's Second Motion for Summary Judgment will be granted.

## FACTUAL BACKGROUND

The following facts are undisputed. Plaintiff Ray's Service, Inc. is a corporation operating under the name of "Ray's Towing Service". In 2006, Plaintiff filed a complaint against the Defendant/Debtor Solomon Ray Cunningham ("Debtor") in the Wood County, Ohio Court of Common Pleas, seeking damages and injunctive relief for trademark infringement. [Doc. # 11-1, Ex. 3]. In the state-court complaint, Plaintiff alleged that the Debtor had been operating an automotive repair and towing business, using the name "Ray's Towing Service," which the Plaintiff used as its trademarked name. [*Id.* at pp. 2-3]. Plaintiff's state court complaint as against Debtor set forth three claims: violations of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code Chapter 4165; the Lanham Act, 15 U.S.C. § 1125; and an Ohio common law claim of unfair trade practices. [*Id.*]. In its Ohio statutory claim, Plaintiff also alleged that the Debtor's acts "were committed willfully, such that Plaintiff is further entitled to recover its attorney fees from Cunningham under Ohio Revised Code § 4165.03(B)." [*Id.* at p. 5, ¶ 15]. In its claim arising from Ohio common law, Plaintiff alleged that "Cunningham's actions were willful and malicious, or with utter disregard for the rights of Plaintiff, such that Plaintiff is further entitled to recover punitive damages and attorney fees from Cunningham." [*Id.* at p. 7, ¶ 29].

In its prayer for relief against Debtor in the state court complaint, in addition to injunctive relief, Plaintiff sought three times Cunningham's profits, "its reasonable attorney's fees and investigative fees pursuant to 15 U.S.C. § 1117," its costs and "such other and further relief that this Court deems legally and equitably appropriate." [*Id.* at pp. 8-10]. The state court complaint also asked the state court to order under 11 U.S.C. § 523(a)(6) that "Cunningham be prohibited from a discharge under 11 U.S.C. §727 for malicious, willful and fraudulent injury to Plaintiff." [*Id.*, p.10,

2

¶ 8]. *But see* 11 U.S.C. § 523(c)(1), (d); Fed. R. Bankr. P. 4007©.

Debtor filed an answer to Plaintiff's state court complaint. [Doc. # 11-1, Ex.4]. During discovery, Debtor failed to attend two scheduled depositions. [Doc. #11-1, Ex. 5, p.1]. Based upon his nonattendance, Plaintiff filed a motion for discovery sanctions. [Doc. #11-1, Ex. 5]. Among the sanctions sought by Plaintiff was the entry of a default judgment against the Debtor. On December 11, 2006, the state court held that the Debtor "failed/refused" to appear at a duly noticed deposition and entered a judgment by default in favor of Plaintiff, finding liability on all three claims against Debtor, including preliminary and permanent injunctive relief, and scheduled a hearing for an assessment of damages. [Doc. # 11-1, Ex. 6]. The State Court Docket, filed by Plaintiff, shows that the Order setting the evidentiary hearing on assessing damages was served on Debtor on December 13, 2006, at the same address where he had accepted certified mail service of the Complaint. [Doc. # 27-2, Ex. 9, pp. 2-4]. A review of the State Court Docket also shows that no mail was ever returned by the U.S. Post Office, indicating that Debtor received adequate notice[1]. [Doc. #27-2, Ex. 9].

At the evidentiary hearing on damages, Plaintiff offered, and the state court admitted into evidence, numerous exhibits, including income statements of Debtor's business, photographs of the vehicles Debtor used for his business, and advertisements that Debtor caused to appear in a newspaper and in the yellow pages. [Doc. # 27, Ex. 7, p. 2]. Plaintiff also called upon three witnesses to testify as to their dealings with Debtor and his alleged misrepresentations regarding his business.[2]

After holding the evidentiary hearing on the issue of damages, the state court entered judgment in Plaintiff's favor on the complaint on January 26, 2007. [Doc. # 1-2, State Court Judgment; Doc. # 9-1, Exhibit State Judgment]. The entire state court Judgment Entry states as follows:

> This cause came on for hearing before the Court on January 18, 2007, for an assessment of Plaintiff's compensatory, statutory, and punitive damages and attorney fees, against Defendant, pursuant to Count One, Two, and Three of the Complaint, and paragraph 1 of the Court's December 11, 2006 Judgment Entry.
> Based upon the evidence adduced at hearing, and the argument of counsel,

---

[1]/ *See generally*, *Talarek v. Miles*, 9th Dist. Lorain No. 96CA006567, 1997 WL 422887 (June 23, 1997).

[2]/ The court notes that because Defendant/Debtor did not attend the evidentiary hearing, the witnesses were not subject to cross examination.

the Court finds that Defendant willfully, knowingly, fraudulently, deliberately, and maliciously infringed upon the Plaintiff's trade name and trademarks, and that plaintiff is entitled to an award of damages as follows:

> 1. Profits from Defendant's misuse of Plaintiff's trade name and trademarks, in the amount of $195,929.00;
>
> 2. Plaintiff's actual damages caused by Defendant's misuse of Plaintiff's trade names and trademarks, in the amount of $46,947.00;
>
> 3. Plaintiff's attorney fees in the amount of $7,312.08; and,
>
> 4. The costs of this action;
>
> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED, that judgment is hereby granted to Plaintiff against the Defendant, in the aggregate amount of a $250,188.09, plus costs.

*Id*.

On September 9, 2012, Debtor filed his petition in this court for relief under Chapter 7 of the United States Bankruptcy Code, Case Number 12-34162. Plaintiff then timely filed this adversary proceeding against the Debtor, seeking to have its claim determined to be a nondischargable debt pursuant to 11 U.S.C. § 523(a)(6). [Doc. # 1]. Plaintiff filed its original Motion for Summary Judgment [Doc. # 9] on January 17, 2013. Upon the passing of the late Judge Speer, this case was transferred to the Successor Judge docket[3], where a Memorandum of Decision and Order ("the First Decision") denying the original Motion for Summary Judgment ("the First Motion") was entered. [Doc. # 13]. The case was then transferred to the docket of Judge John P. Gustafson as the presiding judge. Following the transfer, Plaintiff sought leave to file a Second Motion for Summary Judgment. The court granted Plaintiff's request in a scheduling order that set a deadline for the filing of the Second Motion for Summary Judgment. Subsequently, Plaintiff filed the current Motion [Doc. #25], and Support Documents. [Doc. ## 26, 27]. Defendant/Debtor then filed a response to Plaintiff's Motion and Support Documents. [Doc. # 28]

## LAW AND ANALYSIS

**Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding

---

[3]/ Pursuant to Administrative Order 13-03 of the U.S. Bankruptcy Court for the Northern District of Ohio, the Honorable Mary Ann Whipple presided over the Successor Judge docket.

by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).[4] Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir. 1998).

**11 U.S.C. §523(a)(6)**

As the statutory basis for its complaint to determine dischargeability, Plaintiff relies on § 523(a)(6). This provision excepts from discharge any debt caused by a debtor's willful and malicious conduct, providing:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title

---

[4]/ Although none of the documents offered in support of Plaintiff's current Motion (and original motion for summary judgment) are authenticated, Defendant has not objected at any stage of this adversary case to Plaintiff's reliance on such documents. The court will, therefore, consider the documents for purposes of determining Plaintiff's Motion. *See* Fed. R. Civ. P. 56(c)(1) and (2); *Loadman Group, L.L.C. v. Banco Popular North America*, No 4:10CV1759, 2013 U.S. Dist. LEXIS 40267, at *4-*6, 2013 WL 1154528, at *9 (N.D. Ohio March 19, 2013) (explaining that the 2010 amendment to Rule 56 "replaces a clear, bright-line rule ('all documents must be authenticated') with a multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method for doing so at trial"); *Obnamia v. Shinseki*, No. 11-1204, 2013 U.S. Dist. LEXIS 137621, at *5-*6, n.1, 2013 WL 5408267, at *2, 2013 (S.D. Ohio 2013) (explaining that subject to the opposing party's objection, Rule 56 "allows a party making or opposing a summary judgment motion to cite to materials in the record, whether authenticated or not"); *Martin v. Performance Boat Brokerage.com, LLC*, No. 11-1204, 2013 U.S. Dist. LEXIS 135543, at * 9, 2013 WL 5317460, at *3 (W.D. Tenn. Sept. 23, 2013) (explaining that "the objection contemplated under Rule 56 as amended is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be").

5

> does not discharge an individual debtor from any debt–
>
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

In order to be entitled to a judgment that the debt is excepted from discharge, Plaintiff must prove by a preponderance of the evidence that the injury from which the debt arises was both willful and malicious. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-2 (Bankr. N.D. Ohio 2001). The "debt" arising from the injury must also be one that is not subject to a valid defense. *See, Niedert v. Rieger*, 200 F.2d 522 (7th Cir. 1999); *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 450–51(2007)("state law governs the substance of claims. . ."); *In re Underwood*, 2013 WL 4874341, 2013 Bankr. LEXIS 3789 (Bankr. N.D. Ala. Sept. 12, 2013).

In meeting this burden, the terms "willful" and "malicious" as used in § 523(a)(6) are distinct concepts, with Plaintiff needing to establish the existence of both elements to prevail on a claim of nondischargeability. *Markowitz*, 190 F.3d at 463 (6th Cir. 1999). Addressing the "willful" requirement of §523(a)(6), the Supreme Court stated that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts" and held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Thus, willful injury occurs when "(i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (*citing Markowitz*, 190 F.3d at 464). Under §523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Id.* (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

The requirement of maliciousness is met when a party demonstrates that (1) the defendant-debtor has committed a wrongful act, (2) the defendant-debtor undertook the act intentionally, (3) the act necessarily causes injury, and (4) there is no just cause or excuse for the action. *Vulcan Coals, Inc. V. Howard*, 946 F.2d 1226, 1228 (6th Cir. 1991); *see also, Petralia v. Jercich (In re*

6

*Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001). In seeking summary judgment on its § 523(a)(6) claim, Plaintiff relies wholly on the state court's judgment for damages rendered in its favor and the application thereto of the legal doctrine of collateral estoppel, also known as issue preclusion.[5]

**Collateral Estoppel and Issue Preclusion**

Issue preclusion "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and *necessary to the judgment*, even if decided as part of a different claim or cause of action." *Markowitz*, 190 F.3d at 463 (6th Cir. 1999)(quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992))(emphasis added)). "The purposes of collateral estoppel are to shield litigants (and the judicial system) from the burden of re-litigating identical issues and to avoid inconsistent results." *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005).

Issue preclusion applies in the context of dischargeability litigation. *See Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995) ("The doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a).") (*citing Grogan v. Garner*, 498 U.S. at 284 n.11)). *See also, Tweedie v. Semeniuk (In re Semeniuk)*, No. 2:14-CV-12113, 2015 BL 61456 (E.D. Mich. March 5, 2015). The fact that bankruptcy courts have "exclusive jurisdiction over dischargeability issues does not alter this rule." *Id.* at 53. *See also, Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("[A] state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts."); *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981) ("[T]hat Congress intended the bankruptcy court to determine the final result--dischargeability or not--does not require the bankruptcy court to redetermine all the underlying facts.").

The United States Constitution's Full Faith and Credit clause, U.S. Const. art. IV, § 1, is implemented by 28 U.S.C. § 1738, the federal full faith and credit statute. Under 28 U.S.C. § 1738, a federal court must accord a state court judgment the same preclusive effect the judgment would have in the courts of that state. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. at 374; *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984)*; Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir. 1999); *Bay Area Factors, Inc. v. Calvert (In re Calvert)*,

---

[5]/ In *Corzin v. Fordu (In re Fordu),* 201 F.3d 693 (6th Cir. 1999), the Sixth Circuit noted that the U. S. Supreme Court expressed a preference for use of the terms "issue preclusion" and "claim preclusion" instead of the traditional phrases "collateral estoppel" and "res judicata." *Fordu,* 201 F.3d at 702-03 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).

7

105 F.3d 315, 317 (6th Cir. 1997). Issue preclusion will apply to state court judgments where (1) the law of issue preclusion in the state in which the issue was litigated would preclude relitigation of such issue and (2) the issue was fully and fairly litigated in state court. *In re Markowitz*, 973 F.2d at 461. Here, the court must apply Ohio issue preclusion principles to the state court proceedings.

Under Ohio law, four elements must be met in order to apply the doctrine of issue preclusion: "(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) The issue must have been identical to the issue involved in the prior suit." *Cashelmara Villas Ltd. P'ship v. DiBenedetto*, 87 Ohio App. 3d 809, 814 (1993)(quoting *Monahan v. Eagle Picher Indus., Inc.*, 21 Ohio App.3d 179, 180-81 (1984)); *see Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (6th Cir. B.A.P. 2002); *cf. State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 120 Ohio St. 3d 386, 392, 899 N.E.2d 975, 982 (2008)(*citing Thompson v. Wing*, 70 Ohio St. 3d 176, 183, 637 N.E.2d 917 (1994)(doctrine stated as having three factors, applying "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.")). The person asserting issue preclusion carries the burden of pleading and proving its requirements by a preponderance of the evidence. *Am. Fiber Sys., Inc. v. Levin,* 125 Ohio St. 3d 374, 378 (2010)(citing *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St. 3d 193, 198 (1983)); *A Packaging Service Co. v. Siml (In re Siml),* 261 B.R. 419, 422 (Bankr. N.D. Ohio 2001).

As was stated in the court's First Decision, Debtor did not and has not contested that the first element of issue preclusion is met in this case. In the state court case, Plaintiff properly named the Debtor as a party-defendant in the state court complaint. [Doc. # 11-1, Ex. 3]. Debtor has not taken issue with the competency of the state court's jurisdiction in entering judgment against him. *See, State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 120 Ohio St. 3d at 386 (competency of court to determine issue is part of the second element of issue preclusion). This court notes that the state court's jurisdiction is consistent with Ohio law providing that courts of common pleas are courts of general jurisdiction in the state. *Franklin County Law Enforcement Ass'n v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St. 3d 167, 169, 572 N.E.2d 87 (1991).

Additionally, the First Decision held that, for purposes of the second element of issue

8

preclusion, the January 26, 2007 state court judgment was a final judgment on the merits, even though it was entered by default. *See, Wagner v. Schulte (In re Schulte)*, 385 B.R. 181, 190 (Bankr. S.D. Ohio 2008). [Doc. # 13, p. 7]. However, as the record stood before the court when the First Decision was entered, summary judgment could not be granted due to questions regarding the second, third, and fourth elements of issue preclusion. [*Id.* at pp. 7-16].

As this case now stands, the focus of the dispute between the parties, and the focus of this decision, remains on the requirements of the second, third and fourth elements of the issue preclusion doctrine. In addition to its second Motion, Plaintiff has filed additional exhibits with the court. Plaintiff alleges that the current Motion and Exhibits answer the questions asked in the First Decision. Specifically, 1) did Debtor have a full and fair opportunity to litigate the issues decided?; 2) Were the issues actually tried, decided, and necessary to the final judgment?; 3) Is there an identity of issues between the present action under § 523(a)(6) and the state court litigation?

Plaintiff, as the moving party, has the burden of showing the applicability of these elements. *Am. Fiber Sys., Inc. v. Levin,* 125 Ohio St. 3d at 378; *A Packaging Service Co. v. Siml (In re Siml),* 261 B.R. at 422.

**Second Element: Full and Fair Opportunity to Litigate**

The "full and fair opportunity to litigate" element of the issue preclusion doctrine "is rooted in due process concerns." *S. Atl. Neurology and Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 553 (Bankr N.D. Ohio 2006)(internal quotation marks and citations omitted); *Goodson v. McDonough Power Equip., Inc*, 2 Ohio St. 3d at 200-01, 443 N.E.2d at 985. From a due process perspective, the key to the full and fair opportunity analysis is determining "whether the party had adequate notice of the issue and was afforded the opportunity to participate in its determination." *In re Lupo*, 353 B.R. at 553 (*quoting, Lusk v. Williams (In re Lusk)*, 282 B.R. 267, 277 (Bankr. N.D. Ga. 2002)). Under Ohio law, "if a party is afforded an opportunity to litigate disputed issues of fact and elects not to participate fully in the proceeding, that tactical decision will not prevent the application of preclusion principles in a subsequent action." *State v. Foster (In re Foster)*, 280 B.R. 193, 206 (Bankr. S.D. Ohio 2002); *see also, John Hancock Mutual Life Insurance Co. V. Bird*, Ohio App.3d 206, 590 N.E.2d 336 (1990).

In the First Decision, the court expressed concern regarding the parts of the state court record that had been presented. In the filings leading up to the First Decision, the court was informed that Debtor had answered the state court complaint. [Doc. # 13, p. 8]. Specifically, because Debtor had

9

answered the state court complaint, he had received actual notice and was aware of the averments regarding trademark infringement, the averments that Debtor's acts "were committed willfully, such that Plaintiff is further entitled to recover its attorney fees from Cunningham under Ohio Revised § 4165.03(B)," and the Ohio common law claim, that "[Debtor]'s actions were willful and malicious, or with utter disregard for the rights of Plaintiff, such that Plaintiff is further entitled to recover punitive damages and attorney fees from [Debtor]." [Doc. #11-1, Exs. 3, 4].

However, the record before Judge Whipple did not show whether Debtor filed a response to, or even if the state court held a hearing on, Plaintiff's state court filing of its motion requesting default judgment. If a hearing was held, the record did not show whether and how Debtor was given notice. There was also no record showing whether Debtor was served with a copy of the December 11, 2006 Judgment Entry setting the January 18, 2007 damages hearing, even though the 2006 Judgment Entry directed the clerk to do so. Finally, the record did not show whether Debtor or Debtor's counsel appeared at the damages assessment hearing, so the court could not come to a conclusion, for notice purposes, whether Debtor was given a full and fair opportunity to litigate the issues prior to a finding of liability on Plaintiff's three claims.

With Exhibit 9, Plaintiff has now provided this court with the complete state court docket. [Doc. # 27-2, Ex. 9]. Upon reviewing the state court docket, the following is clear: Debtor did not file a response to Plaintiff's motion for discovery sanctions and default judgment. But, the state court's December 11, 2006 judgment entry, which granted Plaintiff's motion and set the damages hearing for January 18, 2007, was properly served upon Debtor at the same address where he initially accepted certified mail service of the state court complaint. Nothing in the docket indicates that mail was ever returned as undeliverable. [*Id.* at pp. 2-4].

Plaintiff's motion for discovery sanctions and default judgment was granted five days after the motion was filed. While the First Decision expressed some concern regarding the unusually short time the state court gave Debtor to respond, that concern is now alleviated. Plaintiff's motion was brought pursuant to Ohio Civ. R. 37(D) and Ohio Civ. R. 37(B)(2)(c), which provide that the failure of a party to obey a court's order to permit discovery (in this case, Debtor's second failure to appear at a duly noticed deposition) may result in a court rendering a judgment by default against the disobedient party. Default judgments require appropriate notice, and "Ohio appellate courts have relied upon dismissal cases to determine whether appropriate notice occurred default judgment cases." *Huntington National Bank v. Zeune*, 10th Dist. Franklin No. 08AP-1020, 2009 Ohio 3482,

10

¶ 24.

Thus, in evaluating the preclusive effect of the default judgment, Ohio courts could look to dismissal cases. In *Ohio Furniture Co. v. Mindala*, 22 Ohio St. 3d 99, 488 N.E.2d 881 (1986), the court found that "dismissal on the merits is a harsh remedy that calls for the due process guarantee of prior notice." *Id.* at 101. The *Mindala* court involved a dismissal with prejudice, and the court concluded that the notice requirement of Ohio Civ. R. 41(B)(1) applies to all dismissals with prejudice, including those entered pursuant to Ohio Civ. R. 37(B)(2)(c). *Id.* However, there remains some question as to whether the *Mindala* decision applies to judgments rendered by default under Civ. R. 37(B)(2)(c), as occurred in the state court judgment at hand. As the court ruled in *Bank One, Columbus, NA v. O'Brien*, 10th Dist. Franklin Nos. 91AP-165 and 91AP-440, 1991 Ohio App. Lexis 6390, 22 (December 31, 1991), "[a]lthough Civ. R. 41 is not specifically applicable to default judgments, some form of notice is certainly required.'

In such a context, the Ohio Supreme Court has held that a party receives sufficient notice once it is informed that dismissal is a possibility, and it has a reasonable opportunity to defend against dismissal. *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St. 3d 46, 49, 684 N.E.2d 319 (1997). Thus, if a party is served with a motion to dismiss and has an opportunity to file a responsive motion, a court may grant a dismissal. *Id.* at 48-49, 684 N.E.2d 319. When applying this rule in a default judgment situation, the *Fester* court held that when a plaintiff moves for default judgment as a sanction for discovery violations and a defendant had the opportunity to respond but chose not to, the defendant has received the required notice. *Fester v. Price,* No. 96-G-2033, 1997 WL 799418 (Ohio Ct. App. Dec. 26, 1997).

Here, it is undisputed that Debtor was served with a Notice of Deposition, which was filed with the state court on November 15, 2006 [Doc. # 27-2, Ex. 9] and scheduled Debtor's deposition for November 27, 2006. Debtor's counsel, but not Debtor, appeared at the deposition. The deposition was rescheduled to November 30, 2006. Debtor's counsel notified Debtor of the rescheduled date and time, and he reiterated to Debtor that his attendance was mandatory, and failure to attend would result in sanctions, including the possibility of a default judgment. Debtor failed to appear at the rescheduled deposition, although his attorney appeared again. Debtor either failed or refused to answer his attorney's phone calls. [Doc. # 11-1, Ex. 5].

At the very least, Debtor was notified, by his attorney, at some point between November 27 and November 30, 2006 that nonattendance at a deposition could result in a default judgment. [*Id.*

11

at pp. 1-2]. Debtor had two opportunities to attend his scheduled deposition but chose not to. Debtor had an opportunity to respond to Plaintiff's motion, knowing that default judgment was a possibility, but chose not to. [*Id.*]. Thus, this court finds that notice was adequate, and the state court properly granted Plaintiff's motion five days after it was filed.

The record before this court now shows that Debtor/Defendant had a full and fair opportunity to litigate the issues at the state court level. As such, Plaintiff has met the requirement set forth in the second element of collateral estoppel.

**Third Element: Actually Litigated**

In Debtor's Response to Plaintiff's Motion [Doc. # 28], using language nearly identical to that used in Debtor's Response to Plaintiff's First Motion for Summary Judgment [Doc. # 10], Debtor/Defendant focuses on the "actually litigated" component of the issue preclusion doctrine. He takes the position that this requirement of the doctrine has not been satisfied since the judgment was entered by default. [Doc. # 28, at p. 6]. Debtor argues that "[c]ourts have held a default judgment is insufficient basis to apply the doctrine of collateral estoppel." [*Id.*].

Under Ohio law, default judgments ordinarily do not provide a basis for application of issue preclusion, because the purpose of a default judgment is to remove the need of a plaintiff to prove the elements of the claim alleged. Thus, no underpinning issue is actually litigated in granting a default judgment. *Reese v. Proppe*, 3 Ohio App.3d 103, 443 N.E.2d 992 (1981). However, there are exceptions. Not allowing the issue preclusion doctrine to apply to a default judgment is not an absolute rule.

As analyzed by this court in its First Decision, Ohio courts have not agreed on whether or how to apply issue preclusion standards to default judgments. In *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186 (6th Cir. B.A.P. 2002), the Bankruptcy Appellate Panel for the Sixth Circuit ("the BAP"), concluded from the equivocal Ohio case law on the subject that "a default judgment must contain express findings in order to be given preclusive effect in subsequent litigation between the parties." I*d.* at 193. Relying on the bankruptcy court's persuasive analysis in *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 387 (Bankr. N.D. Ohio 1999), the BAP adopted the following test to decide whether an issue was "actually and necessarily litigated" in the context of a default judgment:

> First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the

12

application of the collateral estoppel doctrine in the subsequent proceeding. In addition, given other potential problems that may arise with applying the collateral estoppel doctrine to default judgments (e.g., due process concerns), this Court will only make such an application if the circumstances of the case would make it equitable to do so.

276 B.R. at 193-94 (*citing, Hinze v. Robinson (In re Robinson)*, 242 B.R. at 387). The BAP reasoned that:

[T]he state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special form or formal way, but the default judgment must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

*Id.* at 194. Pursuant to *In re Sweeney*, issue preclusion should only be applied to a default judgment if, in the prior proceeding, the plaintiff submitted admissible evidence which the court then used to make sufficiently detailed findings capable of supporting the application of the doctrine in the subsequent proceeding.

This court was able to determine from the state court's January 26, 2007 judgment entry [Doc. # 9-1, Ex. State Judgment] that Plaintiff had submitted admissible evidence to the state court apart from Plaintiff's pleadings. That evidence was submitted at the hearing held by the state court to assess damages and is shown by the statement in the state court judgment entry: "[b]ased upon the evidence adduced at hearing . . ." [*Id.* at p. 1].

Plaintiff argued in his First Motion that the issues in this case had already been "actually litigated" in the state court at the damages assessment hearing. It based that argument on the language of the January 26, 2007 judgment entry, specifically the language in the entry that stated "that Defendant willfully, knowingly, fraudulently, deliberately and maliciously infringed upon the Plaintiff's trade name and trademarks." [Doc. # 9, p. 3].

With the record as it stood at the time this court issued its First Decision, Plaintiff's argument was not persuasive. In order to assess whether a state court judgment is entitled to preclusive effect in a dischargeability action, a bankruptcy court may review the entire record in the state court case to determine the grounds for, or the meaning of the state court's judgment or order. *See, Miller v. Grimsley (In re Grimsley)*, 449 B.R. 602, 615 (Bankr. S.D. Ohio 2011).

13

In deciding the First Motion, this court lacked most of the record from the state court action against Debtor. There was no state court transcript to show what evidence was submitted and admitted. Because there was no transcript, Judge Whipple was unable to determine what, if any, of the state court's judgment was based upon the "argument of counsel", and what directly resulted from any "evidence adduced at the hearing." It was also impossible to determine whether the state court judge made any oral findings of fact. Simply put, without a transcript, this court could not determine the meaning of the state court's judgment. The state court's entry, standing alone, amounted to a conclusory list of "trigger words." *See, H. Park Partner, LLC v. Frick (In re Frick)*, 427 B.R. 627, 634 (Bankr. N.D. Ohio 2010). *But see,* Ohio Civ. R. 52 (Findings By Court).

This list of trigger words alone was not a sufficiently detailed set of findings and conclusions to meet the standard set forth in *In re Sweeney*, 276 B.R. 186 (6th Cir. B.A.P. 2002). Now, with the filing of its Second Motion for Summary Judgment, Plaintiff has provided the court with additional Exhibits, including the full Transcript of Proceedings from the state court damages hearing [Doc. # 27, Ex. 7], Plaintiff's state court Memorandum in Support of Damages against Defendant/Debtor [Doc. # 27-1, Ex. 8], and the aforementioned state court docket [Doc. # 27-2, Ex. 9]. Plaintiff argues in its Motion that with the additional Exhibits, this court can now decide, based upon the judgment entry that resulted from the argument of counsel and the evidence adduced at the hearing, that the issues under 11 U.S.C. § 523(a)(6) were "actually litigated" at the state court level.

It is clear from the record now before the court that Plaintiff argued, at the damages assessment hearing, for the awarding of full attorney fees based upon Debtor/Defendant's alleged violations under the Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. § 4165, and alleged violations under Section 35 of the Lanham Act, 15 U.S.C. § 1117. Section 43(a) of the Lanham Act is substantially similar to the Ohio Deceptive Trade Practices Act, and an analysis appropriate for a determination of liability under 43(a) of the Lanham Act is also appropriate for determining liability under the Ohio Deceptive Trade Practices Act. *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1434 (S.D. Ohio 1990).

Plaintiff supported its argument for full attorney fees, and based its argument for all monetary relief under the Lanham Act by providing evidence to the state court of Defendant/Debtor's "willful" violations of Plaintiff's common law trademark rights, in the form of a trade name registration, a collection letter, invoices, a small claims complaint, a newspaper article, a yellow pages advertisement, advertisement/letters to several business, and photographs of Defendant/Debtor's truck logos. [Doc. # 27, p. 28].

Further, Plaintiff provided the state court with "Plaintiff's Memorandum in Support of Damages Against Defendant Solomon Ray Cunningham." [Doc. # 25-1, Ex. 8]. It contains the following:

> "The Lanham Act authorizes the Court to award 'reasonable attorney fees to the prevailing party' in exceptional cases. 15 U.S.C. § 1117. Exceptional cases are those where the acts of infringement can be characterized as 'malicious, fraudulent, deliberate, or willful.' *Playboy Enterprises v. Baccarat Clothing Co.*, (CA9, Cal. 1982) 692 F.2d 1272. Defendants consistent failure to comply with discovery rules and willfull [*sic*] infringement of the mark, makes the case exceptional and justifies an award of attorney fees. *Id.* See also, O.R.C. §4165.03(B).
>
> The Plaintiff will present evidence that [Debtor/Defendant]'s use of the mark 'Ray's Towing Service" and variations thereof were deliberate and/or willful in an effort to capitalize for his own benefit upon the goodwill of the Plaintiff's business. Furthermore, Plaintiff will present evidence that Cunningham consistently refused to comply with written discovery and also failed to show up for his deposition, twice! As a result, Plaintiff is entitled to attorney fees considering the actions of Cunningham makes this case fall into the category of 'exceptional.'"

[Doc. # 25-1, Ex. 8, pp. 5-6].

With copies of the state court transcript reflecting the evidence and testimony submitted to the state court, and Plaintiff's Memorandum in Support of Damages Against Defendant Solomon Ray Cunningham, this court can now find that the words of the January 26, 2007, judgment entry are "sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding." *In re Sweeney*, 276 B.R. at 193-94 (*quoting, In re Robinson*, 242 B.R. at 387). Under *Sweeney*, the above captioned case is, of course, the "subsequent proceeding."

### Third Element: Necessary to Final Judgment

The third element of issue preclusion also requires that the litigated issue must be necessary to the final judgment. *Butler Cty. Bd. of Commrs. v. Hamilton*, 145 Ohio App.3d 454, 464, 763 N.E.2d 618 (2001). This requirement tests the materiality of the litigated issue so that only issues essential to the judgment are afforded preclusive effect. 32 OHIO JUR 3D *Res Judicata* § 379. As this court stated in the First Decision, for non-dischargeability the adjudication of the Debtor's willful and malicious conduct must also be construed as necessary and material to the state court's judgment assessing damages against the Debtor.

15

Before attorney fees can be awarded for a violation of either the Lanham Act or the Ohio Deceptive Trade Practices Act, culpability on the part of the defendant must be shown. First, under the Lahnam Act, 15 U.S.C. § 1117(a), attorney fees can only be awarded in "exceptional cases." The Sixth Circuit Court of Appeals has held that the term "exceptional cases" means that the "the infringement was malicious, fraudulent, willful, or deliberate." *Audi AG v. D'Amato*, 469 F.3d 534, 551 (6th Cir. 2006)(*citing, Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004), *quoting Hindu Incense v. Meadows*, 692 F.2d 1048, 1051 (6th Cir. 1982)). Similarly, in an action for a deceptive trade practice under Ohio law, the statute provides that attorney fees may only "be assessed against a defendant if the court finds that the defendant has willfully engaged in a trade practice listed in division (A) of section 4165.02 of the Revised Code knowing it to be deceptive." Ohio Rev. Code Ann. § 4165.03 (West 2014).

At the time this court issued its First Decision, there was no information in the record regarding the basis for state court's awarding of attorney fees. Rule 37(D) of the Ohio Rules of Civil Procedure governs the sanctions for failure of a party to attend his own deposition. The rule specifies that "the court *shall* require the party failing to act...to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court expressly finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Ohio Civ. R. 37(D)(emphasis added). Thus, in the earlier absence of any evidence in the record before this court of basis for the state court's award of attorney fees, and given the mandatory language of Rule 37(D), it was equally plausible that the award was based not on § 1117 of the Lanham Act or the Ohio Deceptive Practices Act, but on the mandatory language of Rule 37(D). If that were the case, the " trigger words"[6] in the default judgment would not have been necessary to the judgment.

Now, this court has been provided with the transcript and the exhibits from the damages assessment hearing. Exhibit 5, included within the transcript, contains the full breakdown of attorney fees charged by Plaintiff's counsel to Plaintiff. Only two billable hour entries, dated November 30, 2006 and December 4, 2006, pertain to the failure of Debtor to cooperate in discovery, which would be the only attorney's fees recoverable pursuant to Rule 37(D). [Doc. # 27,

---

[6]/ The "trigger words" referred to are "willfully, knowingly, fraudulently, deliberately, and maliciously" as used in the state court's Judgment Entry. [Doc. # 9-1, Ex. State Judgment]. If the judgment were awarded only because of the mandatory language of Ohio Civ. R. 37(D), the "trigger words" that are necessary for this court to find that the debt is excepted under 11 U.S.C. § 523(a)(6) were not necessary to the final state court judgment.

12-03201-jpg    Doc 29    FILED 03/10/15    ENTERED 03/10/15 16:42:59    Page 16 of 20

Exhibit 5, pp. 56-57]. The total amount of billable hours counsel for Plaintiff incurred due to the failure of Debtor to cooperate in discovery was 2.10 hours. [*Id.*]. Even though this court is unaware of the hourly rate Plaintiff was charged by its counsel, based upon the information contained in Exhibit 5, this court can safely conclude that the $7,312.08 awarded to Plaintiff in attorney fees was an amount significantly greater than the 2.10 hours counsel for Plaintiff worked due to Debtor's absence from two depositions.

Therefore, because all of plaintiff's attorney fees were awarded, and not just the amount of fees incurred due to Debtor's failure to participate in discovery, this court is now in a position to find that attorney fees awarded to Plaintiff were not based upon Rule 37(D). Rather, the "trigger words" were necessary for the state court's judgment, as the full attorney fees were awarded under either the Lanham Act or the Ohio Deceptive Trade Practices Act. As such, the "trigger words" that the Debtor/Defendant "willfully, knowingly, fraudulently, deliberately, and maliciously" infringed upon Plaintiff's trade names and trade marks were necessary to the state court's final judgment. Accordingly, the third element for issue preclusion has been met.

**Fourth Element: Identity of Issues**

The fourth requirement under Ohio law for the application of issue preclusion is that the issue to be precluded in the present suit must have been identical to the issue involved in the prior suit. *Cashelmara Villas Ltd. P'ship v. DiBenedetto*, 87 Ohio App. 3d at 814 (*quoting Monahan v. Eagle Picher Indus., Inc.*, 21 Ohio App.3d 179, 180-81 (1984)). The issue in this case is whether the state court judgment supports a determination that the Debtor acted both "willfully" and "maliciously" as those words are used in § 523(a)(6).

In his Response to the Second Motion for Summary Judgment [Doc. # 28], Debtor again attacks this requirement in several ways. First, Debtor posits that a trademark infringement case is generally not appropriate for application of issue preclusion principles. Specifically, "[t]rade mark infringement is not one of the types of acts or conducts that gives rise under section 523(a)(6) within the bankruptcy code." [Doc. # 28, at p. 5]. Second, Debtor asserts that from the face of the state-court judgment there "is no way to determine what standard was used by the state court when defining malicious and willful." [Doc. # 28, at p. 6].

The court addressed Debtor's first point in its First Decision, disagreeing that the nature of the state court action precluded application of issue preclusion under § 523(a)(6). As that issue was

17

previously addressed, this decision will focus on Debtor's second point.

While Judge Whipple agreed with Debtor's second point at the time it issued its First Decision, based upon the record before it, the court cannot do so now.

The United States Supreme Court held in *Kawaauhau v. Geiger*, that to satisfy the standard of a "willful" injury under § 523(a)(6), it is necessary to show that the debtor committed a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." 523 U.S. 57, 61 (1998). This holding has been construed to require a plaintiff to show that a debtor acted with the specific intent to cause harm. *Kimco Leasing v. Wilson (In re Wilson)*, 383 B.R. 678, 681 (Bankr. N.D. Ohio 2007). It is not sufficient that the judgment state that a debtor simply engaged in willful or intentional conduct; there must be a finding that the debtor intended to cause the injury or was substantially certain that such harm would result. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463-64 (6th Cir. 1999). In turn, a "malicious" injury under § 523(a)(6) requires that it be shown that a debtor acted "in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)(citing *Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 508, 48 L.Ed. 754 (1904)).

Based upon the more complete record currently before it, this court has an anchor in the state court record that sufficiently explains the conclusory "trigger words." In this case, there is now ample support in the record for concluding that the state court based its judgment under the Lanham Act on Defendant's actions which "willfully knowingly, fraudulently, deliberately, and maliciously infringed upon the Plaintiff's trade names and trade marks." [Doc. # 9-1, State Judgment].

This court is also satisfied that the § 523(a)(6) standard for "willfulness" set forth in *Kawaauhau v. Geiger* has been met. While it is clear that Debtor acted intentionally, under *Geiger* it must also be shown that Debtor intended to cause the injury or was substantially certain that harm would result. The court in *Rigoni et al. v. Mucci (In re Mucci)*, 458 B.R. 802 (Bankr. D. Conn. 2011) provides guidance on the question of whether a debtor intended to cause an injury in a trademark infringement case brought under the Lanham Act. In agreeing with the rationale set forth in *Smith v. Entrepreneur Media, Inc. (In re Smith),* No. 01-02219-A, 2009 WL 6058677 (9th Cir. BAP Dec. 17, 2009), the *Mucci* court quoted the following from the *Smith* decision:

> To resolve this issue, we might identify precisely what state of mind is sufficient to constitute willful injury under § 523(a)(6), and also determine whether the trademark

18

infringement litigation involved that same state-of-mind issue.

. . . .

In trademark infringement litigation, ... intentional infringement is tantamount to intentional injury under bankruptcy law. Unlike in ... *Geiger*, where the debtor had committed medical malpractice, and *In re Su*, [290 F.3d 1140 (9th Cir.2002),] where the debtor had recklessly sped through a red light, it is impossible to separate the "conduct" of trademark infringement from the "injury" of trademark infringement when considering the defendant's intent. In other words:

Performing a medical procedure and driving an automobile are activities that can be executed intentionally, but in a manner that is reckless or negligent with regard to the outcome. On the other hand, activities such as filing a frivolous lawsuit ... or infringing a copyright ... do not have uncertain or variable outcomes. While a medical procedure can result in either healing or harm, and a physician may cause harm by negligence, copyright infringement is a categorically harmful activity.

Like intentional copyright infringement, intentional trademark infringement is a "categorically harmful activity."

. . . .

Simply put, the intent to infringe and the intent to deprive the mark's owner of the value and benefit of his property are opposite sides of the same coin. In other words, when someone intentionally infringes on the copyright or trademark of another, they subjectively desire to harm property belonging to the mark's owner—that is, they seek to deprive the mark's owner of the benefit and value of his or her property.

*In re Mucci,* 458 B.R. at 812-813 (*quoting In re Smith,* 2009 WL at \*9-10).

In adopting the *Smith* court's rationale, the *Mucci* court found that "intentional ... infringement is the equivalent of an 'intentional tort' ... for *Geiger* purposes. Because the District Court found that the instant ... infringement was 'deliberate' ... this court concludes that the resulting injury was 'willful' for *Geiger* purposes." *In re Mucci*, 458 B.R. at 813. Because the state court found in its judgment against Debtor that his actions intentionally infringed upon Plaintiff's trade names and trade marks, this court concludes that the resulting injury was "willful" for *Geiger* purposes. As such, the fourth element of issue preclusion is satisfied.

**Defendant/Debtor's Defense**

Finally, the court will address an additional defense raised by the Defendant/Debtor in his Response to the Second Motion for Summary Judgment. Debtor argues that Plaintiff should be collaterally estopped from filing a Second Motion for Summary Judgment, as he alleges that Plaintiff is attempting to relitigate the issue of summary judgment and is merely adding information

to the record that was available to Plaintiff at the time it filed its First Motion.

This argument is not well taken. Issue preclusion in federal court "bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and ... is essential to the judgment.'" *Bobby v. Bies*, 556 U.S. 825, 834, 129 S. Ct. 2145, 2152, 173 L. Ed. 2d 1173 (2009). The court's order denying Plaintiff's First Motion is not a final judgment for purposes of issue preclusion. *Bennett v. Krakowski*, 671 F.3d 553, 558 (6th Cir. 2011)("Ordinarily, the denial of a motion for summary judgment is an interlocutory ruling, not a 'final order'."). Additionally, case law demonstrates that courts are permitted to rule on a second motion for summary judgment, when a movant has used the second motion as an opportunity to provide additional evidence before the court. *See, Adkins v. Scarlett*, 139 F.3d 887 (4th Cir. 1998); *see also*, *In re. Kermel*, No. 8:05CV154, 2005 WL 2180077 (D. Neb. Aug. 17, 2005) *aff'd*, 178 F. App'x 592 (8th Cir. 2006).

## **CONCLUSION**

In conclusion, the court finds that Plaintiff has met its burden of showing that the doctrine of issue preclusion applies to the January 26, 2007, default judgment rendered by the state court for trademark infringement as a discovery sanction.

Based on the foregoing reasons and authorities,

**IT IS THEREFORE ORDERED** that Plaintiff's Second Motion for Summary Judgment [Doc. # 26] be, and hereby is, **GRANTED,** and the award of damages as set forth in the state court judgment entry [Doc. # 9-1, Ex. State Judgment] is found to be non-dischargeable pursuant to § 523(a)(6). A separate judgment will be entered by the court in accordance with this Memorandum of Decision and Order.

###

20